113 N.J. Super. 474 (1971)
274 A.2d 306
MORRISON STEEL CO., PLAINTIFF-RESPONDENT,
v.
WILLIAM N. GURTMAN, DEFENDANT-APPELLANT, AND JOSEPH R. MATTHEWS AND ALFRED DIEMER, DEFENDANTS. WILLIAM N. GURTMAN, THIRD-PARTY PLAINTIFF-APPELLANT,
v.
GRAVER WATER CONDITIONING CO., A DIVISION OF UNION TANK CAR COMPANY, A FOREIGN CORPORATION, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1970.
Decided March 2, 1971.
*477 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Aaron Z. Schomer argued the cause for defendant-third party plaintiff-appellant (Messrs. Gurtman and Schomer, attorneys; Mr. Schomer, on the brief).
Mr. Otto F. Blazek argued the cause for defendant, Joseph R. Matthews.
Samuel H. Davis argued the cause for plaintiff-respondent (Messrs. Davis and Roth, attorneys; Mr. Davis, on the brief).
Mr. Kenneth F. Kunzman argued the cause for third-party defendant-respondent (Messrs. Hughes, McElroy, Connell, Foley and Geiser, attorneys; Mr. Kunzman, on the brief).
The opinion of the court was delivered by MOUNTAIN, J.A.D.
Defendants Gurtman and Matthews appeal from a Chancery Division judgment entered against them in favor of plaintiff in the sum of $16,188.66 together with costs.
A brief summary of the facts is necessary to an understanding of the issues involved. Plaintiff was a supplier of steel to Paterson Boiler and Tank, Inc. (Paterson). Defendants Gurtman and Matthews were officers of Paterson. The latter manufactured and sold finished steel and aluminum products to various customers, including York Separators *478 (York). Paterson had a checking account with Bank of Passaic and Clifton, not now a party to this suit.
In December 1966 plaintiff, under the protection of a perfected security agreement, shipped materials to Paterson which it used in manufacturing a product sold to York. In payment York issued its check to Paterson in the amount of $25,248. The check was deposited by Gurtman, apparently with the knowledge of Matthews, in Paterson's regular checking account in Bank of Passaic and Clifton. Paterson then issued its check in the sum of $22,954.44 to the order of plaintiff in payment of the materials originally received. This check was deposited for collection, but prior thereto and on May 5, 1967 Paterson filed a petition in the Federal District Court for the District of New Jersey under Chapter XI of the Bankruptcy Act. The check issued to plaintiff by Paterson was not paid. The bank then charged Paterson's account by way of set-off with the balance due on a loan owed by Paterson to the bank in the amount of $8,028, together with the sum of $10,320.99 due the bank under a letter of credit it had issued in favor of Paterson. The balance of the account, $9,917, was turned over to the receiver appointed in the Chapter XI proceeding and thereafter, upon application being made by plaintiff in the federal court, was paid to it, less the sum of $750 allocated to administration expense. The present suit was brought against the individual defendants as officers and directors of Paterson, the theory of the case being that they are liable for having converted assets in the hands of Paterson which constituted security properly belonging to plaintiff.
The Chancery Division judge found in favor of plaintiff on the ground that the individual defendants, as such officers and directors, owed a duty to plaintiff, as a secured creditor of Paterson, to protect assets that came through their hands and that were properly subject to its security agreement. The deposit in Paterson's checking account of the funds received from York, thus exposing them to an exercise by the bank of its right of set-off, was held to be a breach *479 of this duty and to constitute a conversion. In view of the trial judge's conclusion that conversion took the form of subjecting the proceeds received from York to an improper and unacceptable risk, namely, the possibility that the bank might exercise a right of set-off, we are faced with an initial inquiry as to whether the bank did or did not have this right under the facts as they existed when the deposit was made and the bank charged the account. The issue was not determined by the trial judge; it was apparently assumed that the right did exist. It is true that at one point the individual defendants suggested or requested that the bank be made a party to the suit  presumably to test the validity of its right of set-off  but no formal motion looking to this end was ever made. Clearly, if the bank had no right of set-off, then the deposit of the proceeds in the account did not subject the funds to this risk and cannot be considered a conversion. We deem it essential, therefore, to determine whether or not the right did actually exist.
In examining this question we think attention must first be focused upon the Uniform Commercial Code. N.J.S.A. 12A:9-306, dealing with a secured party's rights on disposition of collateral, reads in pertinent part, as follows:
(1) "Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are "cash proceeds". All other proceeds are "non-cash proceeds".
(2) Except where this Chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless
(a) a filed financing statement covering the original collateral also covers proceeds; or
(b) the security interest in the proceeds is perfected before the expiration of the ten day period.
*480 (4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest
(a) in identifiable non-cash proceeds;
(b) in identifiable cash proceeds in the form of money which is not commingled with other money or deposited in a bank account prior to the insolvency proceedings;
(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a bank account prior to the insolvency proceedings; and
(d) in all cash and bank accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account,
but the perfected security interest under this paragraph (d) is
( i) subject to any right of set-off; and
(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings less the amount of cash proceeds received by the debtor and paid over to the secured party during the ten day period.
Initially it may be noted that the financing statement filed by plaintiff does cover the proceeds of collateral, thus bringing plaintiff within the favor of paragraph (3) (a) quoted above. It should be further observed that we are here concerned with "insolvency proceedings" as this phrase is used in the Code.
"Insolvency proceedings" includes any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate of the person involved. [N.J.S.A. 12A:1-201 (22)]
A Chapter XI proceeding is of course designed and intended to rehabilitate the estate of the debtor and hence clearly comes within the scope of this definition.
Applying section 12A:9-306 of the Code quoted above to the facts of this case, it seems clear that under paragraphs (2) and (3) plaintiff had a continuing security interest in the check received by Paterson from York ("identifiable proceeds including collections received by the debtor") from the moment of its receipt to the time of its deposit, and that *481 this was a "continuously perfected security interest." The check was deposited May 3 and the Chapter XI petition was filed and a receiver appointed May 5. Thus, paragraph (4), applicable to "insolvency proceedings," came into play. It will at once be seen that subparagraphs (a), (b) and (c) of paragraph (4) are inapplicable and that we are solely concerned with subparagraph (d). The language of this subsection of the Code was modeled upon section 10 of the Uniform Trust Receipts Act (R.S. 46:35-10), expressly repealed by N.J.S.A. 12A:10-105). The legislative intent in each case is clear  to create a security interest in unidentifiable proceeds. Henson, "`Proceeds' Under the Uniform Commercial Code," 2 UCC Rep. 566, 578-584 (1966), reprinted from 65 Col. L. Rev. 232 (1965); Note, "Entruster's Right to Proceeds of Sale Under § 10 of the Uniform Trust Receipts Act," 66 Yale L.J. 922 (1957).
Generally, as is true here, proceeds will have been rendered unidentifiable by having been commingled with other funds in a single bank account. The security interest in unidentifiable proceeds thus arises upon the intervention of insolvency proceedings coupled with a commingling. The Code broadly extends this "perfected security interest" to "all cash and bank accounts of the debtor," limited, however, to the amount of proceeds received within ten days of insolvency, less any portion thereof paid over to the secured party by the debtor during that period. Here all proceeds were received within the ten-day period and no part thereof was paid to plaintiff. Plaintiff would thus appear to have had a perfected security interest in the entire bank account following the deposit (commingling) on May 3 and the initiation of an insolvency proceeding on May 5. But the interest might yet be affected by the second limitation imposed by the statute, namely, that it is "subject to any right of set-off."
Whether or not a right of set-off exists is to be determined by the law of New Jersey. This determination is unaffected by the Uniform Commercial Code. N.J.S.A. 12A:9-104(i). Appellants suggest that the advent of a *482 bankruptcy proceeding causes the question as to whether there should be a right of set-off to become a matter of federal law. It is certainly true that whether or not this right may be exercised in a bankruptcy proceeding is a matter for decision by the federal court but it does not follow that the existence of the right is to be so determined. Section 68, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 108 makes specific provision for set-off. It is obvious, however, that whether or not there is a valid and enforceable claim or obligation to be used as a set-off depends on applicable state law. Where a question arises that is not specifically covered by section 68, courts will apply substantive state law relating to the asserted right of set-off  as for example the imputation of payments on a plurality of obligations held by a creditor. 4 Collier, Bankruptcy (14th ed. 1942), § 68.06 at 736. Similarly, since the Bankruptcy Act is silent upon the point, the question as to whether a bank may exercise a right of set-off, sometimes loosely referred to as a banker's lien, with respect to funds in its debtor's bank account which do not in fact belong to the debtor, is a matter for determination by the laws of the state.
It is to be noted that this perfected security interest in non-identifiable cash and bank accounts, where the funds have been commingled or deposited and cannot be directly traced, is subject to the bank's right of set-off as determined by state law. [Henson, op. cit. at 579; emphasis supplied]
As previously mentioned, plaintiff made application in the federal court to be paid that portion of the bank account which had been transferred by the bank to the receiver and this application was granted. The bankruptcy court thus explicitly acknowledged the validity of the secured creditor's perfected security interest in this fund. We are therefore not called upon to consider the possibly thoublesome issue as to whether section 12A:9-306(4)(d) does or does not conflict with certain sections of the Bankruptcy Act. As to this question, see Countryman, "Code Security Interests in Bankruptcy," *483 75 Com. L.J. 269 (1970); Kennedy, "The Impact of the Uniform Commercial Code on Insolvency: Article 9." 67 Com. L.J. 113 (1962); Note, "Toward Commercial Reasonableness: An Examination of Some of the Conflicts between Article 9 of the Uniform Commercial Code and the Bankruptcy Act," 19 Syracuse L. Rev. 939, 953-957 (1968).
Does our law, especially since the adoption of the Uniform Commercial Code, afford a bank a right of set-off superior to the perfected security interest  born of agreement and protected by statute  possessed by plaintiff? Middle Atlantic Credit Corp. v. First Pa. Banking & Trust Co., 199 Pa. Super. 456, 185 A. 2d 818 (Super. Ct. 1962), is instructive. There, as here, the debtor deposited funds, which admittedly came under the protection of a valid security agreement, in its checking account in the defendant bank. Upon the initiation of a Chapter XI proceeding the bank claimed and exercised a right of set-off against the borrower's individual obligation to it. The court first noted that section 9-306(4)(d) of the Code did not create a right of set-off. Turning to Pennsylvania law, and in reliance upon Sherts v. Fulton National Bank, 342 Pa. 337, 21 A.2d 18 (Sup. Ct. 1941), the court held that the bank had no right of set-off since the latter case had established as the law of the state that a bank may not set off funds that have been deposited in the borrower's checking account, in which a third party has an interest, regardless of whether the bank knew or had reason to know that the funds were not those of the debtor.
Turning, then, to the law of our own State, we do not find the applicable rule as clearly laid down as was true in Pennsylvania. Since this case must be remanded for further proceedings, including the taking of additional testimony, we consider it appropriate to comment somewhat more fully upon this point.
It is everywhere recognized that where a bank has knowledge that deposits made by a debtor in his own name are in fact the property of a third person, or that some third *484 person has an interest therein, then no right of set-off may properly be asserted. A similar rule should apply where the bank has knowledge or notice of such facts as to put it upon inquiry as to the true character of the deposit. Annotation: "Bank's Right to Apply Third Person's Funds, Deposited in Debtor's Name, on Debtor's Obligation," 8 A.L.R.3d 235, 239 (1966). Accordingly, if the trial court should find, after receiving evidence directed to the issue, that such knowledge or notice existed on the part of the bank, it would follow that the right of set-off had been improperly exercised. On the other hand, if the court should find that the bank had no such knowledge or notice, it must then decide, in the light of the full record, whether the bank possessed a right of set-off the exercise of which could defeat plaintiff's security interest. American Lumberman's, etc., Co. v. Bradley Const. Co., 127 N.J. Eq. 500 (Ch. 1940), aff'd 129 N.J. Eq. 278 (E. & A. 1941), and Frank Briscoe Co., Inc. v. Suburban Trust Co., 100 N.J. Super. 431 (App. Div. 1968), certif. den. 52 N.J. 161 (1968), would seem to favor a holding that a right of set-off may exist. Compare, however, Associates Discount Corp. v. Fidelity Union Trust Co., 111 N.J. Super. 353 (Law Div. 1970)  not an insolvency proceeding  which questions, in light of the language and legislative intent of the Uniform Commercial Code, the continued validity or relevance of the earlier decisions cited above.
We believe that the ultimate question of appellant's liability should be reviewed and reassessed in the light of the trial court's determination upon the issue of set-off and in the light of the full record which will then be before it.
Since no decision on the issue of set-off would bind the bank were it not a party to the suit, the cause is remanded to the trial court with directions that the individual defendants proceed forthwith to join Bank of Passaic and Clifton as an additional party, proceedings to be undertaken thereafter consistent with the views expressed above, all under the direction of the trial court.
*485 Gurtman sought by way of third-party action against Graver to be indemnified by it on the theory that its failure to pay Paterson $11,040.36 created the situation which induced plaintiff to sue him. If anyone had a right to bring such a third-party action, it was Paterson. But overlooking that, the matter is resolved by reference to the law of indemnity, discussed in Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960). There was no liability, primary, secondary or otherwise, against Graver in plaintiff's, favor. Graver had no contract, agreement or any dealings whatever with plaintiff; it was merely a general creditor which suffered when Paterson went bankrupt. Indeed, at the moment when Paterson filed its petition under Chapter XI, it was indebted to Graver for more than $90,000. What Gurtman apparently seeks is to benefit by an allegel contract between Paterson and Graver, to the end that he may be indemnified for an act on his part which plaintiff alleges was tortious as amounting to conversion of corporate funds in which plaintiff had a security interest. The action of the trial judge in granting summary judgment in favor of third-party defendant Graver Water Conditioning Co., is affirmed.
The case is remanded for further proceedings not inconsistent with this opinion. We retain jurisdiction and urge that the matter go forward with all convenient speed.