**FORD MOTOR CREDIT COMPANY, a corporation, Plaintiff,**

v.

**TROY BANK & TRUST COMPANY, a corporation, Defendant.**

Civ. A. No. 83–T–395–N.

United States District Court, M.D. Alabama, N.D.

Aug. 11, 1986.

James T. Upchurch, III, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for plaintiff.

Allen C. Jones, Troy, Ala., for defendant.

MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This action involves a dispute between two secured creditors over the contents of a bankrupt debtor's bank account. The plaintiff, Ford Motor Credit Company, is a Delaware corporation with its principal place of business in Michigan. The defendant, Troy Bank & Trust Company, is an Alabama corporation with its principal place of business in Pike County, Alabama. The amount in controversy exceeds $10,000, exclusive of interest and costs. The diversity of citizenship jurisdiction of the court has therefore been properly invoked under 28 U.S.C.A. § 1332.

I.

The bankrupt debtor, Garnett Rigsby Ford, Inc., was an automobile dealership which maintained a general business account with Troy Bank. Rigsby obtained a

loan from Troy Bank in January of 1980. In exchange for that loan, it executed an agreement granting the bank a security interest in its accounts receivable and in all of its inventory and the proceeds from the sale of such collateral. For reasons not disclosed in the record, Troy Bank subsequently decided that Rigsby should seek financing elsewhere for its new automobile and demonstrator inventory. The bank released all of Rigsby's new automobiles and demonstrators from its perfected security interest in order to encourage such a change.

Rigsby then entered into a separate financing arrangement with Ford Credit. Ford Credit agreed to finance or "floor plan" all of Rigsby's new automobiles and demonstrators; in return, Rigsby granted Ford Credit a security interest in all of its new automobiles and demonstrators and in proceeds from the sale of such secured collateral. The contract specifically required Rigsby to remit promptly all proceeds from the sale of secured collateral.

Two security interests were therefore created by these financial transactions. First, Troy Bank retained a security interest in all of Rigsby's accounts receivable, in all inventory except for new automobiles and demonstrators, and in all proceeds from the sale of such inventory. Second, Ford Credit retained a security interest in all of Rigsby's new automobile and demonstrator inventory and in all proceeds from the sale of such inventory. Both Troy Bank and Ford Credit perfected their security interests by filing financing statements with the Alabama Secretary of State.

The events that led to the filing of this lawsuit began on March 16, 1982. Rigsby sold two new automobiles from inventory, generating $15,627.77 in proceeds from Ford Credit's secured collateral. Rigsby promptly issued a check to Ford Credit in that amount drawn on its business account at Troy Bank. Three days later, however, Rigsby filed a petition for bankruptcy under Chapter VII of the federal bankruptcy laws. *See* 11 U.S.C.A. §§ 701–766. The bankruptcy court directed Troy Bank to deliver all funds then in Rigsby's general business account to the trustee in bankruptcy. These funds totalled $25,843.06. Consequently, when Ford Credit presented Rigsby's $15,627.77 check for payment, Troy Bank returned the check unpaid with the notation "this item is being returned because account in litigation."

Troy Bank and Ford Credit then brought separate adversary claims in bankruptcy court to recover the funds from Rigsby's general business account being held by the trustee in bankruptcy. *See* 11 U.S.C.A. § 506. Troy Bank filed its adversary claim first. It argued that Rigsby had obtained in excess of $25,000 in proceeds from the sale of Troy Bank's secured collateral, that those proceeds had been deposited into Rigsby's general business account, and that the contents of that account should therefore be released to Troy Bank. Ford Credit argued in a separate claim that Rigsby had obtained $15,627.77 in proceeds from the sale of Ford Credit's secured collateral, that those proceeds had been deposited in Rigsby's general business account, and that $15,627.77 should therefore be released from that account payable to Ford Credit. On September 20, 1982, without mention of Ford Credit's competing claim, the bankruptcy court directed the trustee to turn over the entire contents of Rigsby's general business account to Troy Bank. Later, on November 15, 1982, the bankruptcy court dismissed Ford Credit's claim.

Ford Credit then brought suit in this court against Troy Bank seeking recovery of the $15,627.77 in proceeds collateral.

## II.

Both Ford Credit and Troy Bank concede that subsections (1), (2), and (3) of section 7–9–306 of the Uniform Commercial Code, as adopted in the 1975 Alabama Code, generally provide for the continuance of a secured creditor's rights to identifiable proceeds resulting from the disposition of collateral.[1] To assist a secured creditor in

1. Subsections (1), (2), and (3) of section 7–9–306    provide:

identifying cash proceeds, courts have developed rather complex formulas by which the creditor can "trace" cash proceeds into the deposit account of the debtor. *See Ex parte Alabama Mobile Homes, Inc.,* 468 So.2d 156, 160 (Ala.1985). However, if the debtor initiates insolvency proceedings, the rules for the secured creditor change for all cash proceeds that have been commingled with other funds.[2] Subsection (4)(d) of section 7–9–306 provides:

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

    \*     \*     \*     \*     \*     \*

(d) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is:

(i) Subject to any right of setoff; and

(ii) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within 20 days before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).

This subsection completely supplants the tracing rights the secured creditor had prior to the insolvency proceedings. G. Gilmore, *Security Interest in Personal Property,* § 45.9 (1965); J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code,* § 24–6 (1980); P. Murphy & L. Peitzman, *Without a Trace: The Secured Creditors' Interest in Deposit Account Proceeds,* 49 Am.Bank. L.J. 303, 304 (1975). Here, the debtor, Rigsby, did initiate insolvency proceedings and, thus, subsection (4)(d) applies.

While subsection (4)(d) is rather clear on how a single secured creditor's interest is to be determined, the subsection is completely silent on how to treat competing secured interests, as is the case here. Troy Bank argues that the court should apply the "first-to-file rule" of section 7–9–312(5) of the 1975 Alabama Code.[3] Troy Bank

1. "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts and the like are "cash proceeds." All other proceeds are "noncash proceeds."

2. Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

3. The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 20 days after receipt of the proceeds by the debtor unless:

(a) A filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or

(b) A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

(c) The security interest in the proceeds is perfected before the expiration of the 20–day period.

Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this article for original collateral of the same type.

2. The terms "identifiable" and "commingled" are not synonymous. Proceeds may be commingled and yet still identifiable. *Ex parte Alabama Mobile Homes, Inc.,* 468 So.2d at 160.

3. Section 7–9–312(5) provides:

(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interest which do not qualify for the special priorities set forth in subsections (3) and

(4) of this section), priority between conflicting security interests in the same collateral

then argues that it should prevail since it obtained its perfected security interest in its collateral before Ford Credit perfected a secured interest in its collateral. The court rejects this argument as both illogical and unjust. The first-to-file rule of section 7–9–312(5) applies where both creditors have prefected a security interest in the same collateral, and thus there is competing interest in the same collateral. Here, Troy Bank and Ford Credit did not perfect a secured interest in the same collateral; rather, they perfected such in different collateral at different times.

The court is of the opinion that the fairer and more logical reading of subsection (4)(d) is that competing creditors obtain their perfected interest at the same time under the subsection; the subsection's transformation of the nature of a secured creditor's perfected interests occurs when insolvency proceedings are initiated against the debtor, and this is simultaneous for all such creditors. It then follows that, there being a tie for all secured creditors under subsection (4)(d), the appropriate division of the bank account should be prorata. *See* Murphy & Peitzman, *supra,* 318–20 ("by far the more equitable result would be to opt for the tie on the theory that the two security interests in the deposit account "attached" at the same time ... and that the contents of the account should be prorated"); *see also* Note, *Bankrupting the Proceeds Section: Recent Interpretations of Section 9–306(4)(d) of the Uniform Commercial Code,* 55 Texas L.R. 891, 907–10 & n. 108 (1977).

Admittedly, subsection (4)(d)(i) provides for a right of set-off. However, the law is well established that this section was not intended to create a new right of set-off but rather to preserve any right of set-off a bank may have had before subsection (4)(d) took effect. Thus, if the bank had a right of set-off superior to a creditor's perfected security interest before subsection

(4)(d) took effect, the bank still has a superior right afterward; but if the bank, had no such superior right before, then it has no such right afterward either. *Morrison Steel Co. v. Gurtman,* 113 N.J.Super. 474, 274 A.2d 306, 311–12 (1971); *Middle Atlantic Credit Corporation v. First Pennsylvania Banking and Trust Company,* 199 Pa.Super. 456, 185 A.2d 818, 820 (1962); Murphy & Peitzman, *supra,* 316–18. Therefore, since Troy Bank had no right of set-off superior to Ford Credit's perfected security interest before Rigsby went into bankruptcy, the bank has no superior right afterward either. *See, e.g., Morrison Steel Co., supra; Middle Atlantic Credit Corporation, supra.*

In conclusion, the court will enter a judgment declaring that Ford Credit and Troy Bank are entitled to divide Rigsby's bank account as follows: first, each creditor is to determine how much it is entitled to as a secured creditor with a perfected interest according to the formula set forth in subsection (4)(d); second, the two creditors are then to prorate the Rigsby bank account between themselves accordingly; and, third, Ford Credit is to recover its prorated share from Troy Bank.

An appropriate judgment will be entered.

---

should be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, which-

ever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

(b) So long as conflicting security interest are unperfected, the first to attach has priority.