In the Matter of COLLATED PRODUCTS CORPORATION, Debtor.

## COLLATED PRODUCTS CORPORATION,
### Plaintiff,

v.

## UNITED JERSEY BANK/CENTRAL, N.A., Defendant.

**Bankruptcy No. 89–479.**
**Adv. No. 89–101.**

United States Bankruptcy Court, D. Delaware.

March 19, 1990.

---

Peter J. Walsh, Wilmington, Del., for debtor/plaintiff.

James L. Patton, Jr., Laura Davis Jones, Teresa C. Fariss, Wilmington, Del., for defendant.

## MEMORANDUM OPINION
## AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

This is a declaratory judgment action on an issue pertinent to another lawsuit between the parties presently scheduled for trial. *See* 28 U.S.C. § 2201. Collated Products Corporation, a Chapter 11 debtor, seeks a determination as to whether United Jersey Bank has a security interest in $329,767 deposited in Collated's "commingled" operating account at the Delaware Trust Company. It does not by virtue of N.J.Stat.Ann. § 12A:9–306(4)(d).

*Facts*

On August 18, 1988, Collated and the Bank settled a dispute by executing a series of documents which resulted in a reduction of Collated's debt aggregating several million dollars to $910,000 in exchange for Collated dropping certain claims against the Bank. The Bank's collateral described in a schedule attached to a security agreement and financing statement filed with the Delaware Secretary of State includes inventory, accounts, equipment, instruments, general intangibles and the proceeds thereof. Under the terms of the settlement agreement, Collated was granted explicit authority to retain and use cash proceeds:

2. Effective as of the date of this Agreement, Collated shall be permitted to retain and use, in Collated's sole discretion, all of the proceeds of Collated's accounts. The Bank hereby agrees that upon the written request of Collated, the Bank will subordinate its lien upon the accounts of the Borrower as described in Section (ii) of Schedule A to the General Security Agreement to either, (i) a lien in favor of a lending institution providing a line of credit for working capital purposes to Collated or (ii) the general unse-

cured creditors of Collated in return for more favorable payment terms upon Collated's accounts payable.

All documents state that New Jersey law governs. Following August 18, Collated moved its accounts from the Bank to Delaware Trust Company.

Collated's business is the production of game cards and card decks, the latter of which represents 65% to 70% of its gross sales. Collated prints, collates, cuts, and arranges for the mailing of its customers' card decks. When an order is placed, Collated undertakes production of samples and various art and graphics paperwork necessary to satisfy the customer's specifications. After a customer's approval, that deck is printed and collated. The ordered number of the finished product is labeled, sealed, sorted and tied into mail bags. Collated requires its customers to deliver funds for mailing costs 15 days prior to the mailing date. After receipt of the postage check, the mail bags are delivered to the Postmaster. He completes a form which verifies the amount of postage charged for a particular mailing.

Three modes of postal payments evolved over the years. First, the customer delivers to Collated a check payable to the Postmaster which results in a credit to Collated's mailing permit account. Second, the customer delivers to Collated a check payable to the Postmaster which identifies that customer's permit number as the account to be credited. Third, the customer delivers a check payable to Collated. Under the first two methods, Collated delivers the checks to the Postmaster and appropriate credit is given either to Collated's permit account or the customer's permit account. Under the third method, Collated deposited the check into an account designated "Postage Segregated Account" [1] until May 1989. Thereafter, postage funds were deposited in its operating account.

Collated indicates on its invoices the postage charges as well as the method of payment chosen by the customer. Since the postal charges are set by the Post Office, Collated cannot determine the exact amount in advance. However, the overwhelming number of invoices reflect nominal deviations of actual costs compared to the deposited amount (the average overpayment being $263.81 or 2.6% of the average postage charge, and the average underpayment being $361.15 or 3.5% of the average postage charge). Postage charges are substantial in comparison to the billings for the actual card deck job. In fact, for the period February through August 16, 1989, Collated billed a total of $1,556,914 for card deck jobs. Customers made advance payments for postage costs of $1,050,357. (See Exhibits 4A and 3A, respectively).

On May 12, 1989, Collated transferred approximately $26,000 from its segregated postage account into its operating account. From that date to August 4, Collated deposited postage checks directly into its operating account for the express purpose of creating a "commingled" account. Collated's analysis of this account shows $116,380 deposited from customer postage prepayments along with $3,645 interest income, miscellaneous income from scrap metal sales and vending machine commissions of around $1,062, a federal income tax refund of $5,000, and an unspecified amount of routine accounts receivable. (See Exhibit 6A). Collated's last deposit before filing bankruptcy was made on August 4.

*Issue and Applicable Law*

Did the Bank waive its security interest in Collated's accounts under paragraph 2 of the settlement agreement; or, in the alternative, is Collated's security interest in the commingled account limited by § 9–306(4) of the U.C.C.?

■ Although the pertinent Delaware and New Jersey U.C.C. section is nearly identical, New Jersey law rather than Delaware law governs the interpretation and operation of the security instruments. The security agreement and note expressly

---

**1.** The Segregated Postage Account was actually two accounts: an IMMA account and a checking account. These accounts are used in a complementary fashion; thus, the two accounts are here treated as one.

state they are governed by the laws of New Jersey. Section 12A:1–105 of the New Jersey Code permits a choice of law. The parties' agreement prevails.

### No Waiver of Security Interest

■ Collated's contention that the Bank waived its security interest because the settlement agreement provided that Collated could retain and use its proceeds and subordinate the Bank's lien under certain circumstances is without merit. Section 12A:9–205 of the New Jersey Code authorizes a "floating lien" that relieves the Bank from policing its collateral:

*A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral* (including returned or repossessed goods) or to collect or compromise accounts or chattel paper, or to accept the return of goods or make repossessions, *or to use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral.* * * * (emphasis added).

In interpreting this section, the Court of Appeals has observed that "the Code position is perfectly clear that a security interest is not invalid because of failure of the secured party to police the conduct of the debtor." *In re United Thrift Stores, Inc.,* 363 F.2d 11, 15 (3d Cir.1966). Clearly, the parties' security agreement is valid even though Collated was given wide latitude in controlling its assets. The subordination provisions of paragraph 2 of the settlement agreement do not affect the vitality of the Bank's floating lien. *See Brown & Williamson Tobacco Corp. v. First Nat'l Bank of Blue Island,* 504 F.2d 998, 1001–02 (7th Cir.1974).

Finally, the settlement agreement, the security agreement and all the other instruments executed on August 18, 1988 were part of a negotiated settlement. All these documents must be construed harmoniously rather than in an uncomplementary fashion. In summary, the liberty accorded Collated under the settlement agreement did not operate as a waiver of any security interest covered by the security agreement and related instruments.

### Advance Postage Payments are not Proceeds Subject to Bank's Security Interest

■ The Bank's argument that § 9–306(1) includes *all* funds and monies in connection with Collated's business is much too broad and must be rejected. Section 12A:9–306(1) of the New Jersey Code defines proceeds as follows:

"Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

The first sentence of the statute indicates that proceeds must flow from transactions involving the original or substitute collateral and proceeds. Obviously, the customers' advance postage payments cannot be deemed proceeds because they are not substituted for nor derived from the original collateral. *See In re SMS, Inc.,* 15 B.R. 496, 499 (Bankr.D.Kan.1981). The advance postage monies were tangential to production of the card decks and did not flow from the job proceeds. The postage amounts represent mailing costs Collated collected from a specific customer in the ordinary course of business, escrowed and ultimately paid to the Postmaster for mailing that specific customer's card deck. If the Bank's interpretation were adopted, then anything remotely relating to the business which had value would be included under the definition notwithstanding its non-relationship to the original or substituted collateral.

The Bank extends its sweeping construction of § 9–306(1) to argue that Collated's policy requirement of advance payment of postage costs was a contract right or general intangible encompassed under the security agreement. The second sentence of the section states that "the term [proceeds] also includes the account arising when the right to payment is earned under a contract

right." "Proceeds" under this part of the statute is limited to proceeds received by the debtor upon the debtor's performance of the contract. *American East India Corp. v. Ideal Shoe Co.,* 400 F.Supp. 141, 167–68 (E.D.Pa.1975). Here, the postage payments were not made to Collated for its performance; rather, the performance was made by the Postmaster who mailed the card decks. Collated only transferred the customers' prepayments in accordance with its obligations to the customers. As a result, the postage funds cannot be considered a contract right or general intangible because Collated had no direct right to payment. Thus, the Bank's security interest could not attach to the postage monies. *See* N.J.Stat.Ann. §§ 12A:1–201(11), :9–106.

*Section 9–306(4)(d) Limits the Bank's Security Interest in the Commingled Account*

■ Section 12A:9–306(4)(d) of the New Jersey Code limits a secured party's interest in commingled accounts in the event of insolvency proceedings of a debtor. If cash proceeds have been commingled with other money in a bank account, subsection 4(d) limits the security interest in proceeds to an amount not greater than the cash proceeds collected within 10 days of the institution of insolvency proceedings when a right to set-off exists. Thus, the grant of a security interest in commingled funds under 9–306(d)(4) is not an expansion of a secured creditor's pre-U.C.C. right to trace proceeds, but instead, it is a substitution and limitation of that right. *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1300 (10th Cir.1986); *Fitzpatrick v. Philco Fin. Co.,* 491 F.2d 1288, 1292 (7th Cir.1974). The statute is written in the conjunctive requiring a right of set-off along with the limitation of the security interest to deposits measured by the 10–day rule.

On May 12, 1989, the separate postage account was closed and the money was transferred to the operating account. Thus, the funds were commingled and therefore unidentifiable under New Jersey law. *In re Glaubinger Machinery Co., Inc.,* 58 B.R. 38, 40 (Bankr.D.N.J.1986);

*Morrison Steel Co. v. Gurtman,* 113 N.J. Super. 474, 481, 274 A.2d 306, 310 (1971).

Collated's last deposit into its operating account before filing bankruptcy was on August 4. Twelve days later, August 16, Collated filed its Chapter 11 case thereby initiating insolvency proceedings. *See* N.J. Stat.Ann. § 12A:1–201(22) (" 'Insolvency proceedings' includes any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate of the person involved.")

Since no deposits were made in the commingled account within 10 days of Collated going into Chapter 11, the Bank could not have a security interest in the commingled account. Moreover, even if there had been deposits, the Bank had no right of set-off since Collated severed their banking relationship in 1988 and moved its accounts to Delaware Trust.

Section 9–306(4)(d) is the flip-side of the substitution of collateral doctrine authorized under §§ 9–205, 9–306(1), and other U.C.C. provisions. As was the case here, this doctrine grants a creditor latitude in perfecting a lien against a wide array of assets belonging to a debtor. However, these rules change when insolvency proceedings are initiated and some of the collateral or proceeds are commingled with other funds. Though it may be possible to distinguish the postage funds from proceeds, that fact is immaterial under the plain language of this provision. *Maxl Sales Co.,* 796 F.2d at 1300. Thus by operation of law, N.J.Stat.Ann. § 12A:9–306(4)(d), the Bank has no security interest in Collated's operating account in the amount of $329,767 deposited at Delaware Trust.

*Equitable Remedies Not Applicable*

*Unclean Hands*

■ The Bank contends that Collated's manipulation in commingling the postage funds with money in its operating account should prevent it from escaping the Bank's security interest. A fundamental maxim of equity is that one who comes into equity must come with clean hands. *Johnson v. Johnson,* 212 N.J.Super. 368, 515 A.2d 255

(Ch.Div.1986). This usually means that a court of equity will refuse relief to a party who has acted in a manner contrary to the principles of equity. 515 A.2d at 263. The bankruptcy court is a court of equity with power to sift through circumstances to see that injustice and unfairness is not done in the administration of a debtor's estate. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). However, bankruptcy judges cannot ignore the plain language of a statute in order to reach results in keeping with notions of equity. *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir.1987). Here, the law[2] states that equitable principles shall supplement its provisions unless displaced by a particular provision. There is no language suggesting that equity may usurp specific Code provisions.

 Collated's intentional commingling of the postage monies with its operating account did not violate any provision of the settlement agreement or security agreement. Nor was the act overtly dishonest so to violate Collated's implied obligation of good faith under the U.C.C. *See* N.J.Stat. Ann. §§ 12A:1-203 (good faith obligation under U.C.C.), :1-201(19) (definition of good faith). Insolvency proceedings, especially bankruptcy under the 1978 Code, provide debtors with assorted opportunities to limit or unperfect creditors' security interests; however, the Bank's security interest in Collated's operating account terminated by operation of state law—not federal bankruptcy law—in accordance with the New Jersey version of Article 9.

*Fiduciary*

Collated was not akin to a trustee with respect to the Bank's security interest in the operating account proceeds. Accordingly, the trust analogy suggested by the Bank which would improperly apply fiduciary principles to secured transactions must be rejected.

**2.** *Unless displaced by the particular provisions of this Act,* the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estop-

An order in accordance with this Memorandum Opinion is attached.

## ORDER

AND NOW, March 19, 1990, for the reasons stated in the attached Memorandum Opinion, the court finds that United Jersey Bank/Central, N.A. did not waive its security interest in Collated Products Corporation's accounts under paragraph 2 of the settlement agreement executed on the same day as the security agreement; however, by operation of law, N.J.Stat.Ann. § 12A:9-306(4)(d), the Bank does not have a security interest in funds deposited in Collated's commingled operating account in the approximate amount of $329,767.

IT IS SO ORDERED.

pel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause *shall supplement its provisions.* (emphasis added.) N.J.Stat.Ann. § 12A:1-103.