**In re DATAIR SYSTEMS CORPORATION, a Delaware Corporation, Debtor.**

**Bankruptcy No. 82 B 6572.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 27, 1984.

Mitchell E. Jones, Teller, Levit & Silvertrust, P.C., Chicago, Ill., for Datair.

Salvatore A. Barbatano, Lord, Bissell & Brook, Chicago, Ill., for First Bank of Oak Park.

John Gierum, Chicago, Ill., for Small Business Admin.

Joseph Baldi, Chicago, Ill., for trustee.

Jay Steinberg, Schiller & Klein, Chicago, Ill., Trustee.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came before the court on the debtor's ("Datair") motion for summary judgment on its application to have the court determine the secured position and value of the claim of the First Bank of Oak Park ("The Bank"). Additionally, the Bank has filed a motion to convert this Chapter 11 case to a Chapter 7 and a motion to lift the automatic stay. Although those motions are not presently to be decided, their outcome depends upon this court's ruling on the summary judgment motion or the determination of the secured positions resulting from a hearing. For the reasons stated in this memorandum, summary judgment shall be granted in part.

### FACTS

This dispute arises out of transactions involving two corporations, Datair Systems ("Systems") and Datair Financial ("Financial"). The creditor Bank held a perfected security interest to the extent of $185,000 in the assets of Datair Financial Services. The financing statement, which amended an earlier statement, was filed on April 14, 1980. Datair Financial is a wholly-owned subsidiary of Datair Systems. The Bank also holds perfected security interests in all assets of Datair Systems. Those financing statements were filed with the Secretary of State on August 10, 1981 and January 4, 1982. The Small Business Administration ("SBA") is the assignee of a security interest originally filed on March 26, 1980. The assignment to the SBA of the security interest in all assets of every type and de-

scription occurred on May 25, 1982 in the amount of $432,477.48. Datair has asserted that there remains no genuine issue of material fact regarding whether the SBA has the senior lien on the assets of Systems. The Bank asserts that there is a genuine issue of material fact as to which party holds the senior security interest.

The bank contends that it holds the first position by virtue of a constructive trust in "certain accounts receivable and microcomputer software" of Systems. The Bank offers the following facts in support of that argument. The Bank argues that it held a security interest in certain assets of Datair Financial Systems, which was a wholly-owned subsidiary of Datair Systems. The Chapter 11 case of Financial was converted to a Chapter 7 on January 12, 1984. One of the principals of Systems has testified at his deposition that the records of "Systems" reveal cash transfers from Financial to Systems in the amount of $124,000.00. He also stated that payments to both Systems and Financial were deposited into one bank account in the name of "Datair Systems, Inc." From this account, employees of both corporations were paid and creditors of both firms were paid on the basis of "who hollered the loudest."

The value of Systems' assets, as set forth by the debtor, as of the date of filing was $257,458.00. Subsequently, various higher valuations have been set forth by Systems for purposes of its disclosure statement. During the period of reorganization, System's assets have grown. Previously, the parties filed a joint plan of reorganization in which they agreed that the value of System's assets was $257,458.00.

## ISSUES

The first question presented to the court for resolution is whether the parties, for purposes of this controversy, are bound by their earlier agreement as to the value of System's assets. That issue encompasses the question: what is the appropriate date for valuation? The second issue is whether, where a secured creditor claims an interest in the assets of the debtor, and deposits have been placed in a commingled bank account, that creditor's interest in proceeds of that debtor survives the commingling so that a constructive trust is created as to proceeds of that collateral where the balance in the account has dipped below the amount of the secured creditor's security interest.

## DISCUSSION

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure made applicable to the instant proceeding by Bankruptcy Rule 9014. The court may grant summary judgment upon the movant's showing that there remains for trial "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Mintz v. Mother's Fund, Inc.*, 463 F.2d 495 (7th Cir.1972).

■ The debtor has filed this motion for summary judgment on its application to have this court determine the secured status and value of the secured claim of the First Bank of Oak Park. The value of the claim at issue is important because pursuant to section 506(a) a secured party is secured to the extent of the value of estate's interest in the collateral in which he claims an interest. He is unsecured as to any portion of his claim which exceeds the value of the collateral in which he claims an interest.

■ For purposes of this motion, the relevant date for valuation is the date of filing the Chapter 11 petition. That is the point in time when the value of the security interest is fixed.

■ However, this valuation is to be used only for purposes of determining what constitutes adequate protection for the Bank under section 363 of the Bankruptcy Code. Legislative history of section 506 states that "a valuation early in a case in a proceeding under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of the plan." Sen.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) *reprinted in* (1978) U.S. Code Cong. & Admin. News 5787, 5854.

Additionally, a determination of what portion of an allowed claim is secured and what portion is not, is binding only for the purpose for which the determination is made. *Id.* Thus, determinations for purposes of adequate protection are not binding for purposes of "cram down" on confirmation in a case under Chapter 11. 124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,-411 (Oct. 6, 1978).

The court does not premise the value of the bank's claimed interest upon affidavits of Datair's principals, which affidavits the Bank has moved to strike. Rather, the parties previously agreed to the value of the collateral. This court cannot assume that simply because a question of the Bank's secured position has arisen that the Bank may now assert that there remains a genuine issue of material fact as to the value of the assets. Although additional assets may have been created during the period of reorganization, those values are not material to the questions presently before the court. Therefore, for purposes of determining the Bank's right to adequate protection, the claim of the SBA of $432,-477.48 clearly exceeds the value of the assets of Systems which was $257,458.00 as of the date of filing the petition.

Therefore, the Bank does not have a secured claim for purposes of determining its rights to adequate protection unless that position arises as a result of a constructive trust for the benefit of Financial.

The Bank has argued that by virtue of System's apparent use of Financial's assets to create microcomputer software and accounts receivable of Systems, that this court should impose a constructive trust on those assets, that they are actually assets of the now-liquidated Financial, and that they pass to the Bank by virtue of their security interest in the assets of Financial, rather than to the estate of Systems. The court agrees with that argument to a limited extent. This court does not take issue with the cases cited by the bank. The problem is that those cases are not fully applicable to the instant facts. The reason they are inapplicable is that although it is true that the court can create a constructive trust, *In re Wyatt*, 6 B.R. 947, 953 (Bankr. E.D.N.Y.1980), the assets in which the bank claims a security interest are, at best, "proceeds" of funds of Datair Financial. The viability of a security interest in proceeds in the event of insolvency is governed by Section 9–306 of the Uniform Commercial Code. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1291 (7th Cir.1974); Ill.Rev.Stat. Ch. 26, Section 9–306(4)(1982). That section provides: (4) In the event of insolvency proceedings instituted

by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) in all cash and *deposit accounts* of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is

(i) subject to any right to set-off; and

(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).

*Id.* The proceeds must be "identifiable" in order for the security interest in proceeds pursuant to subsections 4(a)(b) and (c) to be valid in the event of insolvency. The Uniform Commercial Code does not define "identifiable". Therefore, the "gaps" are filled in by "principles of law and equity." Ill.Rev.Stat. Ch. 26, Section 1–103 (1982). Courts have used the "tracing concept" borrowed from trust law to fill such gaps in the UCC. *C.O. Funk and Sons, Inc. v. Sullivan Equipment, Inc.*, 92 Ill.App.3d 659, 48 Ill.Dec. 24, 29, 415 N.E.2d 1308, 1313 (1981) and cases cited therein.

This court notes at the outset that where fraud is demonstrated, the court may impose a constructive trust even though the tracing requirement cannot be met. *In re Teletronics, Ltd.*, 649 F.2d 1236, 1241 (7th Cir.1981). That case involved, however, a clear instance of fraud and also construction of an Illinois consumer fraud statute. That case is inapplicable here.

In the present case, the microcomputer software and accounts receivable are arguably non-cash proceeds of the bank deposits to the commingled Datair Systems account. Those deposits were, according to the Bank's theory, cash proceeds of assets of Datair Financial in which the Bank claimed a senior secured position. The problem with this concept is that the tracing which would be necessary is limited by the identifiability requirement of 2–306(2).

The Bank may not claim an interest pursuant to Chapter 26 Section 9–306(2) because its interest thereunder is limited to proceeds which are "identifiable."

■ Illinois courts have used trust law theory to determine a party's rights under 9–306(2). *C.O. Funk & Son, Inc. v. Sullivan Equipment*, 92 Ill.App.3d 659, 48 Ill. Dec. 24, 29, 415 N.E.2d 1308, 1313 (1981). In order to assert an interest under this section, the balance in the commingled account must not have dipped below the amount of the bank's interest. *Id.* 415 at 1314, 48 Ill.Dec. at 30. Since the balance apparently dipped below that amount, the proceeds are not identifiable and the Bank

cannot claim an interest under ch. 26, section 9–306(2)(1982).

The Bank's rights under 9–306(4) are not, however, limited to those proceeds which are identifiable. *See* II Gilmore, *Security Interests in Personal Property* at 1338 *cited in Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1292, n. 4 (7th Cir. 1974).

■ Therefore, the court will impose a constructive trust without requiring tracing to the limited extent that the Bank can demonstrate to the court through documentary evidence that it has an interest pursuant to section 9–306(4)(d). The court, when provided with those documents, will apply the following formula:

1. The amount of cash proceeds received by the debtor during the 10 days before the institution of insolvency proceedings must be ascertained. The secured party bears the burden of establishing this. Gilmore at 1338.

2. From the amount arrived at in Step 1, any amounts paid to the bank during the 10 days prior to filing the petition are to be deducted. The Bank is under a duty to disclose all amounts received.

3. The amount to which the Bank is entitled to claim a perfected security interest is the amount in Step 1 as reduced by the amount of Step 2.

When the court has sufficient documentary information before it, the court will determine the amount upon which the Bank may claim a senior secured position by virtue of constructive trust. In lieu of the court's making this calculation, the parties may enter into an agreement as to what that amount shall be using the formula outlined by the Court.

## CONCLUSION

IT IS HEREBY ORDERED that for purposes of determining what constitutes adequate protection only, the parties are bound by their agreement that the value of Systems's assets is $257,458.00. There is no genuine issue of material fact as to whether the value of the SBA's lien is

greater than the value of System's assets as of the relevant date. Therefore, the value of the Bank's secured claim under section 506(a) for purposes of determining adequate protection shall be limited to the amount upon which the court will impose a constructive trust on the assets of Datair Financial. That amount is limited to that arrived at under Ch. 26, Section 9–306(4)(d) and is to be computed using the formula set forth herein.

This matter is set for further status hearing on September 27, 1984 at 9:30 a.m.