**In re ORIENTAL RUG WAREHOUSE CLUB, INC., Debtor.**

**Bankruptcy No. 4–96–2345.**

United States Bankruptcy Court,
D. Minnesota.

Feb. 6, 1997.

---

T. Jay Salmen, Kennedy & Graven, Minneapolis, MN, for Debtor.

Lonny D. Thomas, Woodbury, MN, for Yashar Rug Co., Inc.

### MEMORANDUM ORDER DISALLOWING SECURED CLAIM OF YASHAR RUG CO., INC.

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on December 4, 1996, on the objection of the Debtor, Oriental Rug Warehouse Club, Inc., to the secured claim of Yashar Rug Co., Inc. ("Yashar"). Appearances were noted on the record. After carefully considering the arguments of counsel, the Court has determined that Yashar's secured claim should be disallowed.

## FACTS

1. The Debtor is a Minnesota corporation engaged in the business of selling oriental rugs and carpets at retail. On April 29, 1993, the Debtor and Yashar entered into a "consignment agreement," whereby Debtor took possession of several of Yashar's rugs for the purpose of reselling them in its business. Debtor agreed to pay Yashar a total consignment price of $106,073.00 for the rugs, and agreed to apply the proceeds received from resale to the outstanding amount owed to Yashar.

2. On May 7, 1993, Yashar filed a UCC–1 financing statement with the Secretary of State for the State of Minnesota to perfect its interest in the consigned rugs possessed by the Debtor.

3. Debtor sold a portion of the consigned rugs but failed to remit the proceeds from the sales to Yashar as provided by their agreement. Instead, the Debtor invested the proceeds from the sale of Yashar's rugs into the purchase of replacement rug inventory or otherwise retained the proceeds. On or around May of 1995, the brother of the president of Yashar went to the Debtor's place of business and repossessed all of the consigned rugs which were still in the Debtor's possession and which had not yet been sold. Although the Debtor currently has rugs in its inventory, the Debtor no longer possesses rugs that were supplied by Yashar.

4. On April 15, 1996, Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. On August 20, 1996, Yashar filed a proof of secured claim in the amount of $64,243.00, representing the outstanding amount still owed to Yashar for the rugs which had been sold by the Debtor without remitting the proceeds. Pursuant to 11 U.S.C. § 502, the Debtor has objected to Yashar's secured claim.

## CONCLUSIONS OF LAW

Under 11 U.S.C. § 502(a) (1994), a proof of claim filed in a bankruptcy proceeding "is deemed allowed unless a party in interest ... objects." A properly filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim.

FED.R.BANKR.P. 3001(f). In the event an objection is made to a proof of claim, the objecting party must produce evidence to rebut the claimant or else the claimant will prevail. *Gran v. Internal Revenue Serv. (In re Gran)*, 964 F.2d 822, 827 (8th Cir.1992) (quoting *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir.1988). If, however, the objecting party brings forth evidence rebutting the claim, then the claimant must produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id.* In other words, once an objection is made to the proof of claim, the ultimate burden of persuasion as to the claim's validity and amount rests with the claimant. *In re Harrison*, 987 F.2d 677, 680 (10th Cir.1993); *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3rd Cir.1992).

█ Section 502(b)(1) of the Code provides that a claim shall not be allowed in bankruptcy if it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law...." 11 U.S.C. § 502(b)(1) (1994). Therefore, a claim against the bankruptcy estate will not be allowed if the same claim would not be enforceable against the debtor outside of bankruptcy. *United States v. Sanford (In re Sanford)*, 979 F.2d 1511, 1513 (11th Cir. 1992). In support of its proof of claim, Yashar argues that, although the originally consigned rugs are no longer possessed by the Debtor, Yashar is entitled to a secured claim against the Debtor's current inventory as proceeds arising from the Debtor's sale of the consigned rugs. In response to this argument, the Debtor argues that Yashar is not entitled to claim a perfected security interest in the Debtor's current inventory because 1) the April 29, 1993 agreement between the Debtor and Yashar was a "true consignment" and not a "secured transaction," and Minn.Stat. § 336.9–306 therefore does not apply; and 2) even if it was a secured financing arrangement, Yashar cannot properly trace the Debtor's current rug inventory to the sale of Yashar's collateral as required by Minn.Stat. § 336.9–306.

I. TRUE CONSIGNMENT OR SECURED TRANSACTION?

█ Section 1–201(37) of the Uniform Commercial Code provides that the term " 'security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation." Pursuant to § 9–102, the determination of whether a particular transaction constitutes a "true consignment" or a "secured transaction" depends on whether the parties intended to create a security interest at the time of contracting. *In re Ide Jewelry Co. Inc.*, 75 B.R. 969, 977 (Bankr.S.D.N.Y.1987). Such intent is to be determined by an objective standard which takes into account the economic realities of the transaction rather than the subjective intent of the parties. *Id.*

█ In *Ide Jewelry*, the United States Bankruptcy Court for the Southern District of New York discussed various factors indicating that a consignment agreement was intended by the parties to create a security interest. Such factors include:

1. The setting of the resale price by the consignee;

2. Billing the consignee upon shipment;

3. Commingling of proceeds and failure to keep proper accounts by the consignee; and

4. Mixing consigned goods with goods owned by the consignee.

*Id.* at 978. In contrast, factors which the *Ide Jewelry* court recognized as indicating that the parties intended a true consignment, rather than a security interest, include the following:

1. Consignor retained control over the resale price of the consigned property;

2. Consignee was given possession with authority to sell only upon the consent of the consignor;

3. Consignor may recall the goods;

4. Consignee was to receive a commission and not a profit on the sale;

5. Consigned property was segregated from other property of the consignee;

6. Consignor was entitled to inspect sales records and the physical inventory of the goods in the consignee's possession; and

7. Consignee has no obligation to pay for the goods unless they are sold.

*Id.*

In this case, the objective characteristics of the agreement between the Debtor and Yashar indicate that the parties did not intend to create a true consignment, but instead intended to grant Yashar a security interest in the consigned rugs. It is undisputed that the Debtor in this case: (i) set its own prices; (ii) was billed upon shipment of the rugs and not upon sale; (iii) commingled both rugs and proceeds of rug sales with its own property; and (iv) was to receive a profit from the sale of the rugs and not a commission. Therefore, instead of creating a true consignment relationship whereby the consignee acts as agent to sell the property of the consignor, the parties to the present case created a standard "floor plan" arrangement whereby Yashar agreed to finance the Debtor's inventory in exchange for a security interest in the consigned rugs. As a secured financing arrangement, therefore, the transaction between the Debtor and Yashar is governed by the provisions of Article 9 of the UCC.

## II. SECURITY INTERESTS IN PROCEEDS UNDER MINN.STAT. § 336.9–306

■ Although the originally consigned rugs no longer remain in the Debtor's possession, Yashar argues that the Debtor's current inventory constitutes "proceeds" from the Debtor's sale of the consigned rugs, and that Yashar is therefore entitled to a security interest in the Debtor's remaining inventory. Section 9–306 of the Uniform Commercial Code governs the continuation and perfection of a security interest in proceeds. Therefore, before addressing the merits of the arguments of counsel, it is appropriate to address the provisions of § 9–306 in some detail.

### A. Continuation of a Security Interest in Proceeds: § 9–306(2)

■ Section 9–306(1) of the UCC defines the term "proceeds" to include "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." MINN.STAT. § 336.9–306(1) (1996). Section 9–306(2), in turn, provides

that, upon the sale of collateral, a security interest in that collateral "continues in any *identifiable* proceeds including collections received by the debtor." *Id.* § 336.9–306(2) (emphasis added). The secured party has the burden of establishing that something constitutes identifiable proceeds from the sale or disposition of the secured party's collateral. *State Nat'l Bank of Platteville v. Cullen (In re Cullen),* 71 B.R. 274, 280 (Bankr.W.D.Wis.1987); *C.O. Funk & Son v. Sullivan Equip.,* 92 Ill.App.3d 659, 48 Ill. Dec. 24, 29, 415 N.E.2d 1308, 1313 (1982), *aff'd,* 89 Ill.2d 27, 59 Ill.Dec. 85, 431 N.E.2d 370 (Ill.1982); 1C PETER F. COOGAN ET AL., SECURED TRANSACTIONS § 24.02[3] (1996). To do this, the secured party must "trace" the claimed proceeds back to the original collateral; in other words, the secured party must establish that the alleged proceeds "arose directly from the sale or other disposition of the collateral and that these alleged proceeds cannot have arisen from any other source." *Funk,* 48 Ill.Dec. at 29, 415 N.E.2d at 1313.

Special tracing problems arise where cash proceeds are commingled with other deposits in a single bank account. Because of the fungible nature of cash proceeds, there is some authority that cash proceeds are no longer identifiable once they are commingled with other funds. *See, e.g., Morrison Steel Co. v. Gurtman,* 113 N.J.Super. 474, 480, 274 A.2d 306 (1971); II GRANT GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY 735–36 (1965). The majority of courts, however, have utilized equitable principles borrowed from the law of trusts to identify whether commingled funds constitute proceeds received from an earlier disposition of collateral. *See, e.g., Quinn v. Montrose State Bank (In re Intermountain Porta Storage, Inc.),* 74 B.R. 1011, 1016 (D.Colo.1987); *Cessna Fin. Corp. v. Millard Aviation, Inc. (In re Turner),* 13 B.R. 15, 22 (Bankr.D.Neb.1981); *Funk,* 48 Ill.Dec. at 28, 415 N.E.2d at 1312, 59 Ill.Dec. at 86–87, 431 N.E.2d at 371–72 (noting that § 1–103 directs that common law principles of law and equity shall "supplement" the UCC). In particular, these courts have utilized the "intermediate balance rule," which creates a presumption that the pro-

ceeds of the disposition of collateral remain in a commingled account as long as the account balance is equal to or exceeds the amounts of the proceeds. *Funk,* 48 Ill.Dec. at 28, 415 N.E.2d at 1312. Therefore, the intermediate balance rule presumes that a debtor who spends money from a commingled account spends first from his own funds. *Id.* Once the balance of the commingled account drops below the amount of the deposited proceeds, then secured creditor's interest in the proceeds abates accordingly. *Id.*

### B. Perfection of a Security Interest in Proceeds: § 9–306(3)

■ If a secured creditor succeeds in identifying property as the proceeds arising from the sale or other disposition of the creditor's collateral, the creditor must still satisfy the provisions of § 9–306(3) to perfect its security interest in the proceeds. In the bankruptcy context, the act of perfection is significant because § 544(a)(1) of the Bankruptcy Code vests the trustee or debtor in possession with the rights and powers of a hypothetical lien creditor, which has priority over all unperfected security interests in the debtor's property pursuant to UCC § 9–301(1)(b).

Minn.Stat. § 336.9–306(3) provides:

The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 20 days after receipt of the proceeds by the debtor unless

(a) a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of collateral in the financing statement indicates the types of property constituting the proceeds; or

(b) a filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds; or

(c) the original collateral was investment property and the proceeds are identifiable cash proceeds; or

(d) the security interest in the proceeds is perfected before the expiration of the twenty day period.

Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances permitted in this Article for original collateral of the same type.

MINN.STAT. § 336.9–306(3) (1996). Thus, to retain priority against a trustee in bankruptcy, a creditor claiming a security interest in proceeds must not only successfully trace the proceeds back to its original collateral, but it must also satisfy one of the four provisions of §§ 9–306(3)(a)–(d).

### C. Security Interests in Proceeds in the Event of Insolvency Proceedings: § 9–306(4)

In the event of the debtor's insolvency, § 9–306(4) creates *additional* limitations on the creditor's right to claim a perfected security interest in proceeds beyond those imposed by §§ 9–306(2) and (3). Section 9–306(4) provides, in relevant part:

In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) in all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is . . . limited to an amount not greater than the amount of any cash proceeds received by the debtor within 20

days before the institution of the insolvency proceedings....

MINN.STAT. § 9–306(4) (1996). Once a bankruptcy petition is filed, therefore, a secured creditor's perfected security interest in proceeds will remain perfected (and thus retain its priority against the trustee) only in the four situations described by § 9–306(4). It is significant to note that, in the case of non-cash proceeds and separate, non-commingled cash proceeds, §§ 9–306(4)(a)–(c) do not impose any new test for the continuation of a perfected security interest beyond that required outside of insolvency; i.e., that the proceeds be "identifiable." Therefore, the practical import of UCC § 9–306(4) lies in subparagraph (d), which eliminates the use of common law tracing theory as a means of identifying cash proceeds in commingled accounts and substitutes in its place the specific formula found in § 9–306(4)(d)(ii). *See Maxl Sales v. Critiques, Inc.,* 796 F.2d 1293, 1300 (10th Cir.1986); *Intermountain Porta Storage, Inc.,* 74 B.R. at 1014; *Cooper v. First Int'l Bank (In re Cooper),* 2 B.R. 188, 196 (Bankr.S.D.Tex.1980). In drafting § 9–306(4)(d), the drafters of the UCC "apparently believed that these hard and fast rules of identification were preferable to the imprecise and time consuming tracing theories." *Maxl Sales,* 796 F.2d at 1300.

### III. YASHAR'S CLAIM

In this case, Yashar alleges that the Debtor sold its collateral in exchange for cash proceeds, deposited the cash proceeds into the Debtor's general checking account, and then reinvested the cash proceeds to buy more rug inventory. Therefore, to succeed in its claim under the UCC, Yashar must show that: 1) the Debtor's current assets constitute "identifiable proceeds" arising from the disposition of its original collateral under § 9–306(2) and §§ 9–306(4)(a); and 2) the proceeds were properly perfected under § 9–306(3)(a).[1] Yashar has not argued that it can trace the Debtor's current rug inventory to the sale of its collateral, however. In fact, Yashar has conceded that "it is impossible to reconstruct exactly what the Debtor did with the proceeds of the sale of Yashar's

consigned inventory." (Yashar Letter Br. of 12/27/96, at 2). Instead, Yashar argues that, although a secured creditor claiming an interest in proceeds has the burden of tracing proceeds when it litigates against other secured creditors, a secured creditor should not bear the burden of tracing when it litigates against the debtor. In suits between a debtor and a secured creditor, Yashar asserts, it is unfair to place the burden of tracing proceeds on the secured creditor, who has no ability to control the debtor's books and record keeping procedures.

Yashar's argument simply has no support in either the case law or in the UCC. Although Yashar may think it unfair to place the burden of tracing proceeds squarely on the shoulders of the party claiming the security interest, both the case law and the leading commentaries are clear in this regard. Where a creditor wishes to claim a security interest in proceeds under § 9–306, the burden is on the party claiming the security interest to identify the proceeds. *Cullen,* 71 B.R. at 280; *Funk,* 48 Ill.Dec. at 29, 415 N.E.2d at 1313, 59 Ill.Dec. at 86, 431 N.E.2d at 371; 1C PETER F. COOGAN ET AL., SECURED TRANSACTIONS § 24.02[3] (1996). Moreover, as a debtor in possession under § 1107, the Debtor in this case has all the rights and powers of a trustee and has therefore stepped into the shoes of a hypothetical lien creditor by operation of 11 U.S.C. § 544. Thus, there is no statutory basis for drawing a distinction between suits between two creditors and those involving a trustee or debtor in possession. In this situation, Yashar should have protected itself by carefully monitoring the Debtor's inventory and by requiring the Debtor to maintain segregated accounts for the deposit of proceeds. The Court declines to disregard the clear provisions of the UCC and holds that Yashar's argument is without merit.

▇▇▇ Finally, despite its inability to identify the Debtor's current inventory as proceeds arising from the sale of the consigned rugs under § 9–306, Yashar contends that other Minnesota law entitles Yashar to an

---

1. Yashar has not argued that it can claim a security interest in any commingled cash and deposit accounts of the Debtor pursuant to § 9–306(4)(d).

**414**

equitable lien against the Debtor's current inventory. In support of this contention, Yashar argues that § 1–103 directs that the UCC be supplemented by principles of law and equity, and that the disallowance of Yashar's secured claim would unjustly reward the Debtor for keeping poor business records and for wrongfully refusing to pay for Yashar's rugs.

■ The answer to Yashar's argument lies within the provisions of § 1–103 itself. Minn.Stat. § 336.1–103 provides that principles of equity are applied *"unless displaced by the particular provisions of this chapter."* (Emphasis added). According to Minn.Stat. § 336.1–103, therefore, the application of equitable principles is inappropriate where a UCC provision is determinative. *First Nat'l Bank of Blooming Prairie v. Olsen*, 403 N.W.2d 661, 666 (Minn.App.1987). In this case, § 9–306 of the UCC expressly deals with the continuation and perfection of a security interest in non-cash proceeds, and Yashar cannot invoke an equitable lien to negate the identification requirement of the UCC. *See In re Collated Products Corp.*, 121 B.R. 195, 207 (D.Del.1990), *aff'd*, 937 F.2d 596 (3rd Cir.1991) (loss of security interest in commingled proceeds is specifically authorized by § 9–306 and equitable considerations thus cannot be invoked by the secured party). The aim of Article 9 is "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." MINN.STAT.ANN. § 336.9–101 Official UCC Comment at 218 (West 1996). To allow security interests in proceeds beyond those recognized by the specific provisions of Article 9 would create unnecessary uncertainty in the realm of secured financing and would conflict with the general policies of Article 9.

Accordingly, and for the reasons stated, IT IS HEREBY ORDERED THAT the secured claim of Yashar Rug Co., Inc. is DISALLOWED in its entirety. Yashar has an unsecured, nonpriority claim in the amount of $64,243.00.